# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **LEON JAMAR WHITE**, | ) | |
| Plaintiff, | ) | Case No.7:22cv00397 |
|  | ) | |
| v. | ) | **OPINION** |
|  | ) | |
| **SGT. BROWN**, | ) | By:  Pamela Meade Sargent |
| Defendant. | ) | United States Magistrate Judge |

Plaintiff, Leon Jamar White, ("White"), a Virginia inmate proceeding pro se, filed this civil rights Complaint against prison officials, pursuant to 42 U.S.C. § 1983. White sues Correctional Sergeant Brown, ("Brown"), for allegedly using excessive force against him and denying him access to medical care for his resulting injuries. In response to the Complaint, (Docket Item No. 1), Brown filed a Motion For Partial Summary Judgment, (Docket Item No. 21), arguing that the medical claim is barred based on White's failure to exhaust administrative remedies, as required under 42 U.S.C. § 1997e(a). After review of the record, the court concludes that Brown is entitled to summary judgment as to the medical claim. White's excessive force claim will be scheduled for trial.

I.

White's claims arose in December 2021, while he was confined at River North Correctional Center, ("River North"), a prison facility operated by the Virginia Department of Corrections, ("VDOC"). In an Affidavit attached to the Complaint, White states that on December 16, 2021, at his cell in the C2 Pod at River North, he questioned Brown about a COVID-19 outbreak and safety concerns related to White's history of asthma. White was "squatting down with [his] right forearm laying flat down on the tray slot to brace [himself] for balance." (Compl. White Aff.

1

at 1, Docket Item No. 1-1.)  Brown "became hostile, grabbing [White's] right arm with both of his hands and began twisting, turning it towards his left, [White's] right, as if to try and break [White's] arm."  (Compl. White Aff. at 1.)  White felt "sharp and immediate pain in [his] right shoulder" and suffered cuts and scratches on his right forearm and shoulder. (Compl. White Aff. at 1.)  In a reflex reaction, he "turned the lower half of [his] body to the right to prevent Sgt. Brown from breaking [his] arm.  From that sudden and a[w]kward movement, [White now has] sharp pains in [his] right hip."  (Compl. White Aff. at 1.)

  White told Brown that he needed medical attention.  Brown called Lieutenant Earhardt, ("Earhardt"), to the cell, and when White told him Brown had assaulted him and he needed medical attention, Earhardt said, "Sgt. Brown didn't assault you . . . ."  (Compl. White Aff. at 2.)  The two officials walked away.  White paged the booth officers to ask for medical care for his arm, shoulder and hip, but without success.  The next day, December 17, 2021, White told Earhardt that he had "agonizing pain" in his right shoulder and hip and had been forced to sleep on the floor because the pain prevented him from climbing onto his top bunk.  (Compl. White Aff. at 2.)  Earhardt did not seek medical attention for White.  White also was charged with a disciplinary infraction for disobeying a direct order.  Later that day, a Friday, he filed a request form asking for medical attention.  The following Tuesday, December 21, 2021, a nurse examined White and prescribed ibuprofen for pain.  The medication helped, but did not last long.

  On December 29, 2021, White paged the booth and reported that his right arm was numb.  Shortly thereafter, Nurse Waller examined White and said she would schedule him see the doctor the next day.  In actuality, White saw Dr. Mathena on January 4, 2022.  The doctor prescribed a stronger dose of ibuprofen and demonstrated some exercises that White should do to alleviate the stiffness in his

arm and shoulder. The doctor also scheduled White for x-rays and advised him to file a request form to the medical unit if he had further medical issues.

Liberally construed, White's Complaint alleges two claims against Brown related to the events of December 16, 2021: (1) use of excessive force and (2) deliberate indifference to a serious medical need. As relief in this action, White seeks declaratory and monetary damages. Brown has filed an Answer as to White's excessive force claim. Therefore, this Opinion addresses only Brown's summary judgment motion as to White's medical claim. Because Brown has responded to this motion, (Docket Item No. 27), the court finds the motion to be ripe for consideration.

II.

The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, "[t]he [c]ourt must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023) (citations omitted). The court "may not weigh the evidence or make credibility determinations." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citation omitted).

To avoid summary judgment, a party must "must … set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Shaw*, 59 F.4th at 129 (citation omitted). Thus, the court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (citation omitted).

A pro se litigant's verified complaint or other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). Where a pro se plaintiff fails to respond to a defendant's specific evidence contradicting the allegations of the Complaint, that defendant may be entitled to summary judgment. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992). A Complaint that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

### III.

### A.

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

VDOC Operating Procedure, ("OP"), 866.1, as in effect in December 2021, was the written administrative remedies procedure that inmates at that time were

required to follow to comply with § 1997e(a). (Mem. Supp. Mot. Summ. J., B. Walls Decl. and Encl. A, Docket Item No. 22-1). Under OP 866.1, all issues that affect the inmate personally are grievable except disciplinary proceedings and matters outside the control of the VDOC. The inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal Complaint or Written Complaint form and submitting it to the Grievance Department. Staff should provide him a written response on the bottom of the Written Complaint form within 15 days, to allow him to initiate the formal grievance procedure by filing a Regular Grievance.

A Regular Grievance (with the Written Complaint form or any other relevant documentation attached) must be filed within 30 days of the occurrence about which it complains. If a Regular Grievance does not comply with the filing requirements of OP 866.1, it will be rejected at intake and returned to the inmate within two working days from the date of receipt. The respondent will note on the back of the form the reason for rejection (expired filing period, more than one issue raised, etc.). The respondent also will instruct the inmate how to remedy any problems with his submission, if feasible, so that he can correct the issue and resubmit the Regular Grievance. If the inmate disagrees with the intake decision, he may send the Regular Grievance to the Regional Ombudsman for review of that decision. There is no further appeal of an intake decision, and an appeal of the intake decision does not satisfy the exhaustion requirement.

Once a Regular Grievance is accepted at intake, the warden or his designee will investigate the complaint it contains and send the inmate a Level I response. If the responding official determines the grievance to be "unfounded" at Level I, the inmate has five days to submit the Regular Grievance and attachments on appeal to Level II, to an appropriate VDOC official such as the Regional Ombudsman or other administrator, depending on subject matter. In most cases, this Level II review is

the final available level of appeal. For full exhaustion, the inmate must submit his claim via a Written Complaint, then in a Regular Grievance and then through all available levels of appeal in OP 866.1.

B.

In support of Brown's partial summary judgment motion, he submits a declaration by the Institutional Ombudsman, B. Walls, ("Walls"), who oversees operation of the Inmate Grievance Department at River North. (Mem. Supp. Mot. Summ. J., Walls. Decl., Docket Item No. 22-1.) Walls has reviewed White's filings to the Grievance Department during the time of the incident at issue in this case.

On December 21, 2021, the Department received a Written Complaint form from White, assigned No. RNCC-21-INF-01849, (Walls Decl., Encl. B). It complains that on December 16, 2021, Brown grabbed and twisted White's right arm as if trying to break it. Lieutenant King responded to this filing, stating that officials would investigate these allegations. On January 10, 2022, the Department received a Regular Grievance form from White, (Walls Decl., Encl. C), making the same claim about Brown twisting White's arm on December 16, 2021, with the Written Complaint attached. On the section of the Regular Grievance form asking for the action the complainant is seeking, White wrote, in part: "I don't feel safe at [River North], emergency transfer me to Sussex II so I could be closer to MCV for medical reasons, mental health issues and my family."[1]  (Walls Decl., Encl. C).

---

[1] According to evidence in the record, the Grievance Department rejected White's Regular Grievance about Brown's alleged use of force at intake and returned it to White for reasons that are not clear. The respondent merely noted that White had been found guilty of a disciplinary offense related to the December 16, 2021, incident. Brown does not argue that White failed to exhaust administrative remedies as to the excessive force claim or that this claim should be dismissed under § 1997e(a) for failure to exhaust.

6

Neither the Written Complaint nor the Regular Grievance form made any complaint that White had been denied medical care by Brown or anyone else.

On January 7, 2022, the Grievance Department received a Written Complaint form in which White claimed that he was having problems accessing medical services. This filing was designated No. RNCC-22-INF-00061, (Walls Decl., Encl. D). Nurse Davis responded on January 10, 2022, stating that White had been seen by a doctor on January 4, 2022, for medical complaints. RNCC-22-INF-00061 does not complain that defendant Brown had any involvement in White's reported trouble accessing medical care after the incident in December 2021.

The Grievance Department received a Written Complaint from White on February 2, 2022, (Walls Decl., Encl. E), complaining that Lieutenant King had not informed him about the outcome of the investigation of the assault incident on December 16, 2021. King responded on February 11, 2022, reporting that the investigation had been completed, and the results were with the Unit Head. This Written Complaint did not allege that Brown had failed to provide White with medical treatment after the alleged assault incident.

On April 22, 2022, the Grievance Department received a Written Complaint from White, designated No. RNCC-22-INF-00660, (Walls Decl., Encl. F). It complained that White had sent three request forms to the Medical Department and needed medical care. This Written Complaint does not allege that Brown interfered with White's attempts to access medical care related to the incident on December 16, 2021.

Wall states that she reviewed all filings to the Grievance Department from White between December 16, 2021, and his departure from River North on June 21, 2022. She reports finding:

> no grievances in which White complained that Sgt. Brown denied him access to medical care. White did not use the grievance process to

>complain that Sgt. Brown refused him medical treatment or otherwise refused to provide access to medical treatment in connection with any injury he claims to have suffered on December 16, 2021 or in response to White's alleged complaints of pain on December 17, 2021.

(Walls Decl., ¶ 16).

## C.

The defendants bear the burden of proving the affirmative defense that White failed to exhaust available administrative remedies regarding particular claims before filing suit. *See Jones*, 549 U.S. at 216. They have done so. On this record, even taking the evidence in the light most favorable to White as the nonmovant, the court finds no material dispute of fact on which White could establish that he timely filed a Regular Grievance about his claim that Brown denied him medical treatment after the December 16, 2021, incident. Indeed, White provides no document or verified statement refuting Wall's evidence about the contents of his complaint filings at River North.

White could escape summary judgment under § 1997e(a) by showing that the remedies under the established grievance procedures were not "available" to him as to one or more of his claims. *See Ross v. Blake*, 578 U.S. 632, 643-44 (2016) (noting that circumstances making prison grievance procedures unavailable "will not often arise"). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). White simply makes no such showing.

For the stated reasons, the court concludes that because White failed to establish that he complied with the exhaustion requirement mandated by § 1997e(a) before filing this lawsuit, Brown is entitled to summary judgment on this issue. Nothing in the record indicates that White could belatedly file viable grievances and appeals under the VDOC procedure that could satisfy the § 1997e(a) exhaustion

mandate. Therefore, the court will dismiss White's medical claim against Brown with prejudice for failure to exhaust available administrative remedies. White's remaining claim alleging that Brown used excessive force against him on December 16, 2021, will be scheduled for a jury trial.

An appropriate Order will be entered with this Opinion, and the Clerk will send a copy of this Opinion and the accompanying Order to all counsel of record and unrepresented parties.

**ENTERED:** September 21, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE